**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

**SIERRA VISTA HOSPITAL,**

    **Plaintiff,**

**v.**                                                     **No. 17 CV 367 JAP/GJF**

**BARTON & ASSOCIATES, INC.,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sierra Vista Hospital (Plaintiff) filed a Complaint in the Seventh Judicial District Court, Sierra County, New Mexico, seeking a declaration as to its rights and liabilities with respect to a locum tenens agreement Plaintiff entered into with Defendant Barton & Associates, Inc. (Defendant). *See* COMPLAINT FOR DECLARATORY JUDGMENT (Doc. No. 1-2). Defendant removed the case from state court based on diversity of citizenship between the parties and an amount in controversy greater than $75,000, *see* 28 U.S.C. § 1332(a); NOTICE OF REMOVAL (Doc. No. 1), and now asks the Court to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and for failure to state a claim, *see* BARTON & ASSOCOATES, INC.'S MOTION TO DISMISS (Doc. No. 7) (Motion). The Motion is fully briefed. *See* PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT (Doc. No. 14) (Response); DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO BARTON & ASSOCIATES, INC.'S MOTION TO DISMISS (Doc. No. 15) (Reply). Because the Court has jurisdiction and

Plaintiff's requested relief is an appropriate subject for declaratory relief, the Court will deny the Motion.

I. BACKGROUND[1]

Plaintiff is a hospital located in Truth or Consequences, Sierra County, New Mexico. Compl. ¶ 1. Plaintiff is a New Mexico state governmental entity and is protected by governmental sovereign immunity. Compl. ¶ 2. Defendant is a Massachusetts corporation in the business of coordinating the placement of temporary locum tenens healthcare providers. Compl. ¶¶ 3, 6–7. On March 30, 2016, Plaintiff entered into an agreement with Defendant, under which Defendant would coordinate the placement of locum tenens providers at Plaintiff's facility through binding placement orders. Compl. ¶¶ 12–14. The agreement contained choice of law and venue provisions in case any dispute should arise between the parties. Compl. ¶ 23.

On May 18, 2016, Plaintiff and Defendant agreed to a placement order whereby Dr. Owen DeWitt was to provide locum tenens medical services at Plaintiff's facility from June 6, 2016, through September 9, 2016. Compl. ¶¶ 15–16. On January 24, 2017, Defendant notified Plaintiff that it believed Plaintiff had breached the agreement by independently and indirectly contracting with Dr. DeWitt without Defendant's contractual involvement. Compl. ¶ 18. Defendant informed Plaintiff that it would view any continued engagement between Plaintiff and Dr. DeWitt as tortious interference with Defendant's contractual relationship with Dr. DeWitt. Compl. ¶ 19. Although Defendant noted that it would prefer to resolve the issue without litigation, it threatened to bring suit against Plaintiff in Massachusetts should those negotiations be unsuccessful. Compl. ¶ 20; Reply at 1–2. Defendant asserts that through the choice of law and venue provisions in the contract Plaintiff agreed to submit legal disputes related to the agreement

---

[1] The facts as recited are taken from the Complaint, as they must be when resolving a motion to dismiss. The parties have not yet provided the Court with a copy of the agreement or the relevant factual details of their dispute.

to a court of competent jurisdiction in the Commonwealth of Massachusetts to be determined under Massachusetts law. Compl. ¶ 23. Plaintiff denies that it is subject to suit in Massachusetts or that Massachusetts law governs this dispute. Compl. ¶¶ 24–29. Additionally, Plaintiff claims that as a governmental entity it is immune from suit for tortious interference in any venue. Resp. at 2. Plaintiff filed a declaratory judgment action rather than waiting for Defendant to sue, requesting the Court to declare that 1) Plaintiff has not breached its agreement with Defendant; 2) Plaintiff has not tortuously interfered with Defendant's relationship with Dr. DeWitt; 3) Plaintiff is immune from suit for tortious interference; and 4) Plaintiff is not subject to suit in the Massachusetts courts and the parties' disputes are not governed by Massachusetts law. Compl. ¶ A. Defendant contends that Plaintiff's Complaint must be dismissed because no actual controversy exists and because the merits of Plaintiff's alleged breach and tortious interference are not proper subjects for declaratory relief. Mot. at 2, 11–12.

## II.     DISCUSSION

In resolving the Motion, the Court will take the well-pleaded allegations of the Complaint as true, and it will not consider materials outside of the pleadings other than those necessary to resolve jurisdictional facts or those referenced in the Complaint and central to Plaintiff's claim. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008) (in resolving a motion to dismiss, district courts may properly consider documents referred to in the complaint and central to the plaintiff's claim, and may take judicial notice of adjudicative facts); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (when jurisdictional facts are challenged, the district court may consider materials outside the pleadings without converting the motion to one for summary judgment).

The Court applies federal procedural law and state substantive law when exercising its diversity jurisdiction. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011). Because a declaratory judgment statute provides only a procedural remedy and does not create any substantive right, the federal Declaratory Judgment Act (DJA), 28 U.S.C. § 2201, controls this action. *See Farmers Alliance Mutual Insurance Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978). Under § 2201(a) the Court may, "[i]n a case of actual controversy within its jurisdiction, . . . declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

A.   **Subject Matter Jurisdiction**

Defendant first argues for dismissal of Plaintiff's Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(1), contending that there is no justiciable controversy between the parties that will establish this Court's subject matter jurisdiction. *See* Mot. at 2. "[T]he facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 138 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The Court cannot issue advisory opinions as to "'what the law would be upon a hypothetical state of facts.'" *Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937)).

Defendant asserts that the dispute between the parties is not ripe for review because Defendant has not filed suit against Plaintiff and has stated its preference to resolve the disagreement without litigation, making any possibility of legal action against Plaintiff hypothetical and speculative rather than imminent. Mot. at 3–5. In evaluating ripeness, the Court examines "both the fitness of the issue for judicial resolution and the hardship to the parties of

4

withholding judicial consideration." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (internal quotation marks omitted). Defendant contends that Plaintiff's claim rests on a series of contingencies too uncertain to be fit for review because it is unknown whether Defendant will file suit against Plaintiff, and if so, in which forum and on what legal theory. Mot. at 5. It further argues that Plaintiff faces no hardship from the denial of judicial review because Plaintiff is not currently facing any lawsuit. Mot. at 6.

In response, Plaintiff relies on *MedImmune*, 549 U.S. 118, and maintains that it is not required to wait for Defendant's threat of suit to be actualized. Resp. at 7. The Court agrees. An actual controversy does not require an actual lawsuit. "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune*, 549 U.S. at 127. "[T]he existence of an Article III case or controversy has never been decided by a judicial wager on the chances the parties will (imminently or otherwise) sue one another; rather, it has always focused on the underlying facts, assessing whether they suggest an extant controversy between the parties or whether instead they merely call on us to supply an advisory opinion about a hypothetical dispute." *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1242 (10th Cir. 2008).

While a lawsuit between the parties here may be hypothetical, the dispute is not, and neither are the facts upon which the dispute is based. Defendant has informed Plaintiff that it believes Plaintiff has breached the contract between the parties and has tortiously interfered with the contractual relations of Defendant and Dr. DeWitt, and Defendant has noted that if the parties are unable to negotiate a solution amicably it will be forced to sue Plaintiff in Massachusetts. Plaintiff, on the other hand, maintains that it has not breached its agreement with Defendant and has not tortiously interfered with Defendant's contractual relationship with Dr. DeWitt, and

argues further that it is not subject to suit in Massachusetts and is immune from suit for tortious interference. These are not abstract issues of law. The parties clearly have adverse legal interests in an actual dispute arising out of specific facts, and the resolution of the controversy will have practical consequences as to the parties' negotiations and business relations even if Defendant does not file suit. *See Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011).

Declaratory judgment actions are intended to settle disputes whether or not a suit other than the declaratory judgment action has been filed. *See Surefoot LC*, 531 F.3d at 1242. In *Aetna*, there was jurisdiction to declare the status of insurance policies even though the insured had not sued for coverage and there was no suit pending other than the declaratory judgment action. 300 U.S. at 239, 243–44. The insured had filed claims with the insurer for total disability, asserting that he was entitled to coverage under the policies and was no longer required to pay premiums. *Id.* at 242–43. The insurer contested the fact of the alleged disability and rejected the claims, then argued that the policies had lapsed when the insured ceased paying the premiums. *Id.* The Supreme Court concluded that there was an actual controversy, even though the insured had not filed suit challenging the rejection of his claims, because "the parties had taken adverse positions with respect to their existing obligations" based upon the contested but definite fact of the insured's disability. *Id.* at 242–44. Resolution of the controversy would settle the rights and obligations of the parties under the policies, while continued uncertainty would compel the insurer to maintain financial reserves in case of liability. *Id.* at 239, 242. The Court considered the clear ability of the insured to sue for the disability payments he claimed were presently due and concluded that the justiciable nature of the legal issue was no different simply because the suit was brought by the party seeking to avoid liability. *Id.* at 243–44.

6

Similarly here, Defendant has the present ability to file suit for breach of contract and tortious interference, as demonstrated by its threat to do just that. The facts upon which the controversy is based may be disputed, but they have already occurred and can be determined by the Court. Resolution of the parties' rights and obligations under the agreement through declaratory judgment would settle the dispute and is no less justiciable than a suit brought by Defendant in contract or tort.

A dispute may be justiciable even when a lawsuit over the matter is extremely unlikely. The Supreme Court in *Medimmune* held that a dispute over patent infringement was an actual controversy even though an enforcement suit had not been filed, and likely never would be filed because the licensee was continuing to pay royalties. 549 U.S. at 131–33. The Supreme Court stated, "The rule that a plaintiff must destroy a large building, bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business before seeking a declaration of its actively contested legal rights finds no support in Article III." *Id.* at 134. Defendant asserts that *Medimmune* was a narrow holding inapplicable here because Plaintiff is not facing such dire consequences and has not made payments under protest. Reply at 3. But the holding in *Medimmune* relied on the coerced nature of the payments to demonstrate that there was an actual controversy despite the unlikeliness of a lawsuit, and it did not depend on the amount of potential damages faced by the plaintiff. Here, Plaintiff has not engaged in negotiations with Defendant, so nothing other than Defendant's stated preference to avoid the courts suggests that suit is unlikely. But even if it is, Plaintiff is not obligated to wait for Defendant to sue, risk exposing itself to continuing potential liability, or negotiate a settlement despite its belief that it is not liable.

Defendant argues that any actual controversy is nevertheless not ripe for review because of the contingencies of any potential lawsuit. Mot. at 9. But "these contingencies would only be relevant if waiting for them to play out would significantly advance [the Court's] ability to deal with the legal issues presented or aid . . . in their resolution." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 904 (10th Cir. 2016) (internal brackets and quotation marks omitted). The relief requested by Plaintiff will require the Court to determine the facts of the parties' actions and contractual obligations and construe the law as to Plaintiff's amenability to suit. These issues are fit for judicial review as neither the facts nor the law depend on Defendant's decisions regarding a lawsuit. Further, withholding judicial consideration will cause hardship by forcing Plaintiff to choose between altering its actions and negotiating a settlement to a dispute for which it believes it is not liable or exposing itself to greater potential liability and, in the event Defendant does file suit, defending the claim in out-of-state courts. These are "real-world consequences." *Columbian Fin. Corp.*, 650 F.3d at 1379. "The contingent nature of the right or obligation in controversy will not bar a litigant from seeking declaratory relief when the circumstances reveal a need for a present adjudication." *Allendale Mut. Ins. Co. v. Kaiser Engineers, Div. of Henry J. Kaiser Co.*, 804 F.2d 592, 594 (10th Cir. 1986). The Court concludes that it has jurisdiction over Plaintiff's Complaint for Declaratory Judgment.

Even when jurisdictional requirements are met, the Court has the discretion to decide whether to exercise that jurisdiction and proceed with a declaratory judgment action. Factors that the Tenth Circuit Court of Appeals has stated the Court should take into consideration are:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena of a race to res judicata"; [4] whether use of a declaratory action would increase friction between our federal and state courts

and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir.1995) (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir.1994)). The Court believes that the requested declaratory relief would settle the entire controversy between the parties because it would resolve Plaintiff's liability and amenability to suit as to the allegations by Defendant and determine the parties' future rights and obligations under the contract. This would serve a useful purpose in clarifying the past and future legal obligations of the parties under the agreement. It is possible that the request for declaratory relief is "procedural fencing," to some degree, because Plaintiff seeks to resolve the dispute in the forum of its choosing rather than waiting to defend itself in Massachusetts. But Plaintiff has already been forced into federal court through Defendant's removal, and other than the avoidance of travel the Court is not aware of a procedural advantage for Plaintiff in having these issues adjudicated in this Court. Proceeding with this action will not cause friction with the state courts because there is no pending state lawsuit. And finally, there is no better alternative remedy because no other suit has been filed and this declaratory action will settle the controversy. Considering all of these factors, the Court concludes that the exercise of jurisdiction over the claim for declaratory relief is appropriate.

**B.     Failure to state a claim**

Even though the Court has jurisdiction to consider Plaintiff's claim, Defendant argues that Plaintiff's requests for declaratory judgments that it has not breached the contract and that it has not tortiously interfered with Defendant's contractual relations are not proper because they are not questions of law. Mot. at 11–12. Defendant asks for dismissal of those two issues under Federal Rule of Civil Procedure 12(b)(6) because it asserts that the relief requested is "outside the bounds of the DJA." Mot. at 12. However, Defendant misconstrues the statute.

The DJA "allow[s] prospective defendants to sue to establish their nonliability." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959). The merits of the potential tortious interference and breach of contract claims against Plaintiff depend upon "the rights and other legal relations" of the parties, which the Court has broad power to declare. § 2201(a). The parties' legal obligations, and by extension whether they have breached those obligations, are determined by the construction and validity of the contract, in addition to the facts of the parties' actions. The Court may determine facts as part of a declaratory action. *See, e.g.*, *Aetna*, 300 U.S. at 242 ("That the dispute turns upon questions of fact does not withdraw it, as the respondent seems to contend, from judicial cognizance.").

Further, the Court may afford broad relief within a declaratory action as necessary to resolve the controversy. 28 U.S.C. § 2202. The merits of Defendant's allegations against Plaintiff must be addressed to fully settle the dispute between the parties as is required in a declaratory judgment action. *See Medimmune*, 549 U.S. at 127 n.7 (citing *Calderon v. Ashmus*, 523 U.S. 740, 749 (1998) for its holding "that a litigant may not use a declaratory-judgment action to obtain piecemeal adjudication of defenses that would not finally and conclusively resolve the underlying controversy."). Even if Plaintiff prevails as to its other requested declarations, concerning its immunity and its amenability to suit in Massachusetts or governed by Massachusetts law, Defendant could still file suit in New Mexico on the breach of contract claim unless the Court decides that issue in this proceeding.

THEREFORE, the Court orders that Defendant's motion is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE